Good morning, Justices. Paul Jackson, appearing for the Appellant David Moss. I just want to make a couple of brief observations. Mr. Moss, of course, had the restriction placed upon him that he could not enter this particular building because the people in the building did not like him. He was told he could not walk on the sidewalks outside of the building because the people in the building did not want to see him. I don't see how this is different in a lot of ways than the restriction we might have found a few decades back that a person of color had to sit in the back of the bus or couldn't drink from a particular drinking fountain. This is an ongoing affront to the dignity of the person involved. The district court found that Mr. Moss could not timely bring an action objecting to these sorts of restrictions because they had been in place for years. If that were the case, the problems that we had years ago in the Deep South would still be there. That simply is not and should not be the law. Even if it's not considered an ongoing violation, the law is that each time there is a re-invocation of the particular restriction. Well, Morgan's kind of a problem for you, don't you think? I'm sorry? The Morgan case. The Morgan. I'm not hearing you. The Supreme Court's decision in Morgan is a problem for you. You know, Judge Lay and I sat on Morgan when it was in front of this Court and we bought into the argument that there was a continuing violation. The Supreme Court corrected our thinking. So we disagree. Judge Dorothy Nelson wrote the opinion. If it's not a continuing violation, Your Honor, under the Chorosky v. Henderson case, each time this restriction is reimposed, if someone says, can I walk on the sidewalk now, can I go in the building now, and the ---- Well, Chorosky was different people, though, not the same person, right? It was a number of people. Yeah. But I don't see how that makes it any different in its application. If a person has got a restriction on them that's improper and they ask to have that restriction lifted or ask if it's still imposed and they're told, yes, you cannot walk on the sidewalk ever, then according to Chorosky, then there is a new statute of limitations that applies based upon that statement. Mr. Moss has indicated, and there's been no disagreement, that he went to see the EEO counselors the very day that this was last told to him. The Baysmore v. Friday case, you know, indicates the same thing, that Chorosky is good law. So I don't see why there should be a problem with this being timely. I simply think that it is. I also have a significant problem with the district court's refusal to consider the evidence of discrimination that Mr. Moss presented in his Merit Systems Protection Board case. He had a number of indices that the actions taken against him were discriminatory, not the least of which was the agency's positive response to the question, did you consider Mr. Moss to be disabled? And they simply said yes. He was reinstated. The district court found in just a couple of days after that that the restrictions were placed on him, but said that he cannot look at, cannot use any of the evidence that predates his reinstatement because that case was settled. Well, this places almost an impossible burden on him to find that there is some evidence in a matter of a couple of days of discrimination, and more importantly, there is simply no authority for the proposition that the fact that a particular action has been resolved. And so that's no longer actionable. It means that all of the evidence that was used to establish that is forever barred from being used in some other action, or even the fact that the action took place is something that's barred. I simply think that the Court should have considered the evidence that was introduced in connection with the Merit Systems Protection Board case, and it should have found that when he asked if he could now go in the building, if he asked that if he could now walk on the sidewalks outside of the building, if he was asked if he could now get a different job, and he was all told, no, you cannot do any of these things. You're staying where you are forever and permanently, but then a new statute of limitations for the final contacting of the EO counselor was triggered, and that he met that particular requirement, and he should have been allowed to proceed to trial. That's really the only point I want to make at this point. I reserve whatever time I've got for rebuttal. Thank you, Your Honor. Good morning, Your Honor. Cindy Cipriani, appearing for the government. Well, it might not surprise you to know that we view the opinion of Judge Miller as extraordinarily well-reasoned. It does construe Morgan. It construes Lyons, which this Court has, or this Court interprets Morgan. It contains a very reasoned analysis of discrete versus nondiscrete actions, the statute of limitations in this case, and basically relies on Ninth Circuit precedent to show the plaintiff knew or should have known at a certain point that certain actions were permanent. And one was the Can 28, and another was the Building 250 restrictions. And you can't just sit on your rights for years and then come back later and say, I've decided now that based on essentially a question to his boss, is this still in place? And the boss says yes. Based on that, it wasn't really a request for transfer out of Can 28. He made it clear in his deposition he didn't want to leave Can 28. And he was offered several times, do you want to leave Can 28, by subsequent bosses. He did not want to leave Can 28. He was happy there. So essentially all he's asking is, is that still the case? Is that still your ruling? They're saying yes, and he files an EEO complaint based on that. So we do think it falls outside Chorosky. Chorosky was a different situation. And Chorosky, you know, because it involved multiple employees and an ongoing policy, basically an employee who did not previously ask could come up and make a new request and put the policy on the table again. Here, it's one employee who's been told specifically what the acts are of management with regard to him and who sat on his rights with regard to those acts for a number of years and did not complain. Analytically, divorced from this case, analytically, why do you think that the fact that multiple employees were involved makes any difference? Can't we have, I mean, Morgan was a case in which we had a series of discreet acts against one employee and they were different acts. Why doesn't that analysis apply even if there's just one employee? Well, Your Honor, I would basically say that dicta in Chorosky that suggests that a new request does restart the statute of limitations clock, it would be very troubling if, in fact, it were a holding and it had to be followed, that even if it is multiple employees, a fresh request necessarily should not restart the statute of limitations clock. If an employee, say employee A makes the first request and is told no, and employee B makes a subsequent request, if he would have reasonably believed based on employee A's request that that was management's position, he shouldn't really get a fresh bite at the apple just because he makes a new request. So I would question the dicta in Chorosky and whether that should be the rule, because I think if it is the rule, essentially, the statute of limitations will become meaningless. It will eviscerate the statute of limitations, and really all you would need to do is have somebody make a fresh request on a given issue that might affect more than one employee. These particular issues only affected Mr. Moss, and I think management's rules regarding and directives regarding these particular issues were pretty clear to Mr. Moss from his deposition testimony, you know, by his own admission, way before  Another point I wanted to make is with regard to the evidence that was garnered during the MSPB proceeding. And essentially, the district court did not ignore that evidence. It looked at the evidence. It did say that to the extent you're trying to raise claims that were raised before the MSPB, for example, the claim that you were removed because you were disabled, that you were retaliated against in your removal, which it certainly looked like in district court and even on the court of appeal he was still challenging and arguing that those were retaliatory, that those particular incidents were evidence of perceived disability discrimination, that you certainly waived those claims. He did go on to look at some of the evidence and say, even though I believe this relates to waived claims, I'm going to look at it. And with regard to the co-worker statements, all those co-workers worked in 250. They have nothing to say about management actions that took place in 472 when she came  back. They have nothing to say about any kind of atmosphere you experienced in 472 after you came back. With regard to Mr. Valino's statement, which was a management statement, it did look at Mr. Valino's statement, because once it found that the move to CAN 28 and the building 250 restrictions were not timely, it still considered those restrictions for purposes of background evidence consistent with Morgan and Lyons with regard to the timely claims for denial of ‑‑ alleged denial of overtime and denial of training, and basically said that it would consider Mr. Valino's declaration, even though it was prereinstatement, because it could have influenced the building 250 restriction, and yet found that ultimately it did not influence the CAN 28. It did not influence the denial of overtime and training because those both occurred because of CAN 28, which had nothing to do with Mr. Valino. So ‑‑ and we think that the analysis the district court used is very strong, that he carefully looked at all the evidence in several instances. He overruled defendant's objections to evidence that we felt was just reputation evidence and conclusory evidence of management's overall reputation for retaliation. He considered everything in the light most favorable to plaintiff and ultimately concluded that plaintiff could not prove his case. And, you know, the government feels strongly that that is the case here, and that even if the claims were deemed timely on the merits, they would fail because there's no evidence that there was any kind of discriminatory animus. The employer has to have some flexibility to try to maintain a peaceful and productive workplace, and the evidence shows, you know, they have obligations to Mr. Moss, but they also have obligations to other employees. And Mr. Moss admitted that when he came back to work, he stared in a hostile fashion what may well have been, he said, a hostile fashion in his declaration at the manager who he had formerly threatened. And, you know, given that, and given recent incidents at NAIDAP of violence in the workplace and, you know, incidents that we hear about prominently from time to time, NAIDAP has an obligation to try to do whatever it can to maintain a peaceful and productive workplace. And that really is what its motivation was here, and there's no indication there was any unlawful motivation. So unless the Court has questions. Thank you, counsel. Thank you. I have a couple of comments in rebuttal. First of all, I don't believe there's anything in the record that indicated Mr. Moss indicated he did not want to leave Can 28 at the time he made his request to his supervisor. After the litigation was filed and a year into the case, at a deposition, he was asked whether or not he would like to leave Can 28 now if he had the opportunity. And he was very ambivalent in his response, indicating that after the suit had been filed, things had been settled down, and it was the next blessing being there because people were picking on him as well. But at the time, he asked to leave Can 28 so that he could go have his regular skills and not languish and get the overtime and the training. He was asking to go back out of Can 28. As far as the discreet act and the continuing violation, again, this is not like a demotion or some other discreet act that has, even though it has a continuing effect, it's not an everyday thing. Being told you cannot walk on the public sidewalk is not the same sort of an action as being told you've been demoted or you're transferred to Alaska or something of that nature. This is something that is a continuing act. Attorney Cipriani indicated that the Court did look at the Merit Service Protection Board action and did consider that. That's not the case according to my reading of the judgment. My indication, and I actually have got a note of that, says that it's at page 677 of the record, the court, district court specifically stated that Mr. Moss needed to produce evidence of a discriminatory animus that postdated his reinstatement and his, just a day or two later, imposition of the restrictions on his movement. And the last thing, with regard to the incidents that have been alleged as a good basis for the government's actions, first of all, there's absolutely no evidence that Mr. Moss ever threatened the supervisor Valino. He had testified against Mr. Valino's interest a few weeks earlier on behalf of a coworker, and he had filed his own complaint about Mr. Valino. Mr. Valino then filled out a report saying Mr. Malino or Mr. Moss pointed a finger at him as if it were a gun. Mr. Moss denies this. There are absolutely no witnesses. So we really have no credible evidence of any sort of a threat. The fact that after he was reinstated, he gave Mr. Valino a nasty look is hardly a basis to banish him forever to an isolated area and tell him he cannot walk upon the sidewalks of the base. I simply see no justification for the government's actions. And I believe they're clearly predicated on both its belief that he was disabled and needed to be isolated and in retaliation for the fact that he had filed his complaints in the first place. If you have no other questions, I have nothing further. Thank you, counsel. The case that's argued will be submitted. The next case for oral argument.
judges: Lay , Reinhardt, Thomas